UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

|  |  |  |
|---|---|---|
| MARIE T. FRYDA, MARK E. VANDERPOL, PHILLIP HICKS, MATTHEW BIGELOW, on behalf of themselves and all other similarly situated | : : : : : : | |
| Plaintiffs, | : : | CASE NO. 1:11-cv-00339 |
| v. | : : | OPINION & ORDER [Resolving Doc. No. 7] |
| TAKEDA PHARMACEUTICALS NORTH AMERICA, INC., TAKEDA PHARMACEUTICALS AMERICA, INC., KAREN L. KITCHEN, and ADAM FOSTER | : : : : : : | |
| Defendants. | : : | |

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this class action alleging violations of the Ohio Minimum Fair Wage Standards Act, Defendants Takeda Pharmaceuticals North America, Inc. ("TPNA"), Takeda Pharmaceuticals America, Inc. ("TPA"), Karen L. Kitchen, and Adam Foster move this Court to transfer the case to the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. § 1404(a). [Doc. 7.] Plaintiffs Marie T. Fryda, Mark Vanderpol, Phillip Hicks, and Matthew Bigelow oppose. [Doc. 14.]

For the following reasons, the court **GRANTS** the Defendants' motion to transfer venue.

## I. Background

Case No. 1:11-CV-00339
Gwin, J.

On January 12, 2011, the Plaintiffs filed this class action in the Court of Common Pleas of Cuyahoga County, Ohio, alleging violations of the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111.03. The Plaintiffs allege that the Defendants improperly classified them as exempt from overtime pay and, as a result, failed to compensate the Plaintiffs for overtime hours worked. [Doc. 1-2 at 4.]

On February 16, 2011, the case was removed to the Northern District of Ohio, before Judge Patricia A. Gaughan. The case was then transferred to this Court on March 22, 2011, after the Defendants filed a motion to transfer in this case and in a similar collective action, *Siegfried v. Takeda Pharmaceuticals*, already pending before this Court.[1] Neither Ohio suit, however, is the first filed by Takeda employees against their employer. On September 29, 2010, another TPNA employee filed a putative collective action in the Northern District of Illinois.[2] That suit, *Jones v. Takeda Pharmaceuticals et al*, alleges violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., and also seeks a declaratory judgment and damages in the amount of unpaid overtime wages. [Doc. 1-6.] On February 18, 2011, the parties in the *Jones* case stipulated to the consolidation of later filed and transferred cases. [Doc. 7-1.]

Similar to the other *Siegfried* and *Jones* suits, the Plaintiffs here were employed by the Defendants as Professional Sales Representatives and were responsible for promoting the Defendants' products to physicians. [Doc. 1-2.] And, the Defendants in this putative class action include TPNA and TPA, just as the *Jones* case does. Both of these Defendants are headquartered

---

[1] *Siegfried et al. v. Takeda Pharmaceuticals North America, Inc.*, No. 1:10-cv-02713 (December 1, 2010).

[2] *Beth Jones v. Takeda Pharmaceuticals North America, Inc., and Takeda Pharmaceuticals America, Inc.* No. 1:10-cv-06240 [hereinafter *Jones*].

Case No. 1:11-CV-00339
Gwin, J.

in Deerfield, Illinois. [Doc. 7 at 12-14.]

There are, however, differences between this case and the previously filed cases. The Plaintiffs here bring suit only under the Ohio Minimum Fair Wage Standards Act; they do not make a corresponding federal claim under the Fair Labor Standards Act. In addition, the Plaintiffs bring a putative class action under Federal Rule of Civil Procedure 23, rather than a nationwide collective action, and propose a class that would include only former and current Ohio Takeda Professional Sales Representatives in Ohio. Finally, the instant action names two defendants—Ohio Takeda Regional Managers Karen Kitchen and Adam Foster—that the other cases did not. [Doc. 1-2 at 4-5.]

## II. Section 1404(a) & Discretionary Factors

Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Sixth Circuit requires "a district court [to] consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)).

Typically, more than one forum could be an appropriate venue for trial and some inconvenience will exist to either party no matter which venue is chosen. Consequently, if a change of venue serves merely to shift the inconvenience from one party to another, a change of venue is generally not warranted. *Kirk v. Shaw Environmental, Inc.*, No. 1:09-cv-1405, 2010 WL 520827, *3 (N.D. Ohio Feb. 5, 2010) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964)). "Consistent with that principle, a generalized assertion by a defendant that witnesses reside in, and documents

-3-

Case No. 1:11-CV-00339
Gwin, J.

are located in, the proposed transferee district, is generally insufficient to merit transfer." *Id.* (citing

*Hartford Accident & Indem. Co. v. Dalgarno Transp., Inc.*, 618 F. Supp. 1450 (S.D. Miss. 1985)).

Ultimately, "[t]he defendant, because it is the party requesting a transfer of venue, bears the burden

of proof to show the factors weigh 'strongly' in favor of transfer." *Picker Intern, Inc., v. Travelers*

*Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998).  When a defendant makes such a showing,

transfer is appropriate.

### III. Transfer Under § 1404(a)

The Plaintiffs do not contest the Defendants' assertion that the Plaintiffs could have properly

initiated this action in the Northern District of Illinois. [Doc. 7 at 12.] Thus, the Court will focus its

analysis on § 1404(a)'s discretionary factors.  *See Picker*, 35 F. Supp. 2d at 572; *see also* 28 U.S.C.

§ 1404(a).  Specifically, the Court will consider convenience to the parties and potential witnesses,

as well as public-interest concerns, including which forum has the greater interest in the suit as well

as concerns over efficiency.  *See Moses*, 929 F.2d at 1137.  The decision to transfer ultimately lies

within the Court's discretion.  *United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 887-88

(N.D. Ohio 1999).

### *A. Private Interests of Parties*

The Court first considers the private interests of the parties—namely, convenience to the

parties and potential witnesses, and the parties' interests in securing relevant documentary evidence.

*Moses*, 929 F.2d at 1137.

The Plaintiffs do not allege that they would suffer any inconvenience from transfer to the

Northern District of Illinois. [*See* Doc. 14.] Moreover, though the Plaintiffs' choice of forum

typically receives substantial weight, *Cinemark*, 66 F. Supp. 2d at 887-88—particularly where, as

Case No. 1:11-CV-00339
Gwin, J.

here, the Plaintiffs indicate they only seek to certify an Ohio-wide class—this choice of forum is not dispositive. Indeed, it may be overcome by a defendant's proper showing that other relevant factors weigh heavily in favor of transfer. *See United States ex rel. Kairos Scientia v. Zinsser Co.*, No. 10-cv-383, 2011 WL 127852, at *2 (N.D. Ohio Jan. 14 2011).

Regarding convenience to the parties' potential witnesses, the parties argue that important witnesses reside in each venue. The Defendants indicate that the more relevant potential witnesses reside in Illinois and work from the Defendants' Illinois headquarters—including at least two employees from the Human Resources Department, an unidentified number of witnesses from various Sales Management positions, and at least one individual from the marketing department. [Doc. 7 at 5-6.] The Plaintiffs indicate that the putative class members—the Ohio Professional Sales Representatives—are themselves key witnesses, as are those who supervised the Ohio employees, some of whom reside in Ohio. [Doc. 14 at 5.]

Convenience to witnesses is more than a numbers game; a court should not merely tally witnesses but should instead evaluate the significance of their expected testimony. *See Young*, 2010 WL 395224, *6 (citing *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 547-548 (S.D.N.Y.2008)). Because this is a wage dispute suit alleging that, as a matter of policy, the Defendants mis-classified an entire class of their employees and consequently withheld overtime pay, this Court finds that the witnesses of central relevance—senior and management level employees with policy-making and implementing authority—are located in Illinois.

Moreover, that these centrally-relevant Illinois witnesses would not be subject to compulsory process in Ohio is critical. Under Federal Rule of Civil Procedure 45(c)(3), a subpoena may be quashed if it requires a witness to travel more than 100 miles. Though transferring this case to

-5-

Case No. 1:11-CV-00339
Gwin, J.

Illinois would merely shift which party's witnesses are beyond compulsory process, the more essential fact witnesses—and therefore the witnesses it is most important to subject to compulsory process—are those located in Illinois.  *See Meagher v. Great Lakes Dredge & Dock Co.*, 201 F. Supp. 113, 115 (N.D. Ohio 1962).  Therefore, the location of critical witnesses in Illinois, and this Court's inability to compel their appearance, weighs in favor of transfer.

Finally, the Defendants assert that relevant documentary evidence is located in Illinois. [Doc. 7 at 6-7, 14.] The Plaintiffs do not offer any claim that more relevant documentary evidence is located in Ohio, but correctly emphasize that the location of documentary evidence is of only limited importance because documents can be transported.  *See Picker Int'l*, 35 F. Supp. 2d at 574. However, just as a court should do more than merely tally witnesses, a court should give some consideration to the substantive relevance of the documents each party injects into the convenience analysis. *Cf. Young*, 2010 WL 395224, *6 (citing *ESPN, Inc.*, 581 F. Supp. 2d at 547-548). Documents likely to be of central importance to the instant wage dispute—payroll and personnel files, as well as company policies and procedures—are located in Illinois, as the Defendants' principal place of business is in Illinois.  [Doc. 7 at 6-7, 14.] Admittedly, this is not a major factor.

In sum, the private interests of the parties support transfer.  Although the Plaintiffs' choice of forum weighs against transfer, the Defendants present other factors which weigh heavily in favor: witnesses of central importance located in Illinois who would otherwise not be subject to compulsory process, and key documents located in Illinois.

### B. Interests of Justice

In addition to the convenience of the parties and witnesses, the Court must also consider any public interest concerns, including systemic integrity and fairness, that are implicated by a decision

-6-

Case No. 1:11-CV-00339
Gwin, J.

to transfer.  *See Moses*, 929 F.2d at 1137.  This case involves two significant public interest concerns: the local forum's interest in this case and efficiency concerns.

First, the Plaintiffs suggest that venue should remain in Ohio, as Ohio has an interest in applying its own law. [Doc. 14 at 6-7.] This argument is less persuasive, however, because the Ohio Minimum Fair Wage Standards Act uses the same standards as the federal Fair Labor Standards Act. "Because the Ohio statute at issue defers to the standards set out in the FLSA, familiarity with the applicable law is also not an issue that weighs in favor of either forum." *Eberline v. Ajilon LLC*, 349 F. Supp. 2d 1052, 1055 (N.D. Ohio 2004).[3/] The Court thus finds Ohio's interest in this suit outweighed by judicial efficiency concerns.

Regarding judicial efficiency, the fact that a substantially similar claim has been filed against similar Defendants in the Northern District of Illinois is significant.[4/] The Supreme Court has "made quite clear that '[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.'" *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)).  The fact that the parties in the *Jones* case have stipulated that they will consolidate later filed and transferred cases, [Doc. 7-1], further supports the conclusion that transfer of this case to ensure the efficient use of resources and avoid duplicative results.  *Id.*; *see also Krawec v. Allegany Co-Op Ins. Co.*, No. 1:08-CV-2124, 2009 WL 1974413, *6 (N.D. Ohio July 7, 2009).  Here, the significant gains in

---

[3/] "Courts have uniformly held that Ohio's wage and hour law should be interpreted in accordance with the FLSA." *Mitchell v. Abercrombie & Fitch, Co.*, 428 F.  Supp. 2d 725, 732 (S.D. Ohio 2006) (citing *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, n.2 (6th Cir. 1997)).

[4/] *Beth Jones v. Takeda Pharmaceuticals North America, Inc., and Takeda Pharmaceuticals America, Inc.*, No. 1:10-cv-06240.

Case No. 1:11-CV-00339
Gwin, J.

judicial efficiency achieved by transfer overcome the interest that Ohio has in serving as the venue in this matter.

Though the Plaintiffs' choice of forum is granted significant weight here, the Court finds that the factors of convenience and the interests of justice tip the scale in favor of transfer. Transfer under § 1404(a) is therefore appropriate.

### IV. First-to-File Rule

The Defendants also raise the first-to-file rule in support of their motion to transfer. [Doc. 7.] "The first-to-file rule is a well-established doctrine that encourages comity among federal courts of equal rank. The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should generally proceed to judgment.'" *Zide Sport Shop of Ohio, Inc. v. Ed Tobergate Assoc., Inc.*, 16 Fed. Appx. 433, 437 (6th Cir. 2001) (quoting *In re Burley*, 738 F.2d 981, 988 (9th Cir. 1984)). In deciding whether to transfer a case pursuant to the first-to-file rule, the Court looks to three factors: "(1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake." *Plating Resources, Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 904 (N.D. Ohio 1999) (citing *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625-26 (9th Cir.1991)). In assessing these factors, this Court will look only to the similarity between the instant action and the *Jones* case. Any relevance of the *Siegfried* case is limited to potential consolidation, not a matter currently before this Court.

The first factor is easily satisfied. The *Jones* case was filed on September 29, 2010, [Doc. 7-2], before the instant action was filed on January 14, 2011 and removed to federal court on February 16, 2011. [Doc. 1-2; Doc.1.]

-8-

Case No. 1:11-CV-00339
Gwin, J.

Second, similar—although not identical—parties are involved in the instant action and the *Jones* case. Here, the Defendants include TPNA and TPA, who are also defendants in the *Jones* case. [Doc.1.] Although this action additionally names two regional managers as individual defendants, this Court finds persuasive the Defendants' suggestion, in its Notice of Removal, that TPNA and TPA are the primary and more significant defendants. [Doc. 1 at 8-9.] Moreover, it not an absolute requirement that parties be identical to warrant consolidation under the first-to-file rule. *Plating Resources, Inc.*, 47 F. Supp. 2d at 903. The presence, therefore, of two additional individual defendants is not enough to overcome the otherwise substantial similarity between the defendants in this action and those in the *Jones* case. *See id.* ("Generally, courts should invoke the rule when two suits involving substantially the same parties and purpose have been filed in [courts with] concurrent jurisdiction.") (citing *Barber-Green Co. v. Blaw-Knox Co.*, 239 F.2d 774, 778 (6th Cir. 1957))

Similarly, the Plaintiffs in the instant action, all Personal Sales Representatives employed by the Defendants in Ohio since January 12, 2008, [Doc. 1-2 at 9], overlap significantly with the class designated in the *Jones* suit. The plaintiffs in that suit are all "Medical Representatives," a group that includes Professional Sales Representatives. [Doc. 7-2.] Although not identical, the parties involved the *Jones* case represent a larger collection of both plaintiffs and defendants broad enough to cover the parties involved in the instant action and are therefore similar for purposes of the first-to-file rule. *See Long v. CVS Caremark Corp.* No. 5:09-cv-1392, 2010 WL 547143, at *3 (N.D. Ohio Feb. 11, 2010).

Third, the instant action and the *Jones* case involves similar issues. The plaintiffs in both cases allege incorrect classification as overtime-exempt employees. [Doc. 1-2; Doc. 7-2.] As

-9-

Case No. 1:11-CV-00339
Gwin, J.

previously discussed, that the Plaintiffs bring their claim under Ohio law alone does not destroy the similarity to *Jones* in issues raised, because the state and federal statutes apply the same standard. The Plaintiffs additionally argue that because they are organized as a putative Rule 23 class, the statute of limitations period is tolled for each class member until his or her written consent to join the action is filed—unlike for the *Jones* plaintiffs, whose opt-in claims are not similarly protected. [Doc. 14 at 3.] However, the Plaintiffs do not argue that transfer to the Northern District of Illinois, or consolidation with the *Jones* case, would remove this protection.  Nor do they present other factors, beyond that they uniquely bring a putative Rule 23 class action, to distinguish the issues in their case from *Jones*.

The Court finds all three factors of the first-to-file rule satisfied, and concludes that resolution of the first *Jones* case would leave little to be resolved in the instant action.  *See Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 690 (E.D. Tenn. 2005).

### IV. Conclusion

After considering the convenience to the parties and witness, the interests of justice, and the similarity of this case to the earlier-filed *Jones* case, the Court finds transfer of this case to the Northern District of Illinois warranted.  Critical to this decision is that the motion to transfer was not a bare request by a corporate defendant for its own convenience and standing only in the face of the Plaintiff's choice of forum, but rather that one that presents an opportunity to consolidate litigation involving similar parties and issues.

For the foregoing reasons, the court **GRANTS** the Defendants' motion to transfer this case

Case No. 1:11-CV-00339
Gwin, J.

to the United Stated District Court for the Northern District of Illinois.

   IT IS SO ORDERED.


Dated: April 13, 2010       s/  *James S. Gwin*
              JAMES S. GWIN
              UNITED STATES DISTRICT JUDGE